UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
STEEVE BERNARD ORELUS,

                           Plaintiff,

   -against-

THE UNITED STATES OF AMERICA,

                           Defendant.

-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
23-CV-2451 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this negligence-Federal Tort Claims Act litigation, on referral from the Honorable Joan M. Azrack, is Defendant the United States of America's ("Defendant" or the "Government") motion for summary judgment ("Defendant's Motion" or "Def. Mot."), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), DE [27].

By way of Complaint (or "Compl.") filed on March 30, 2023, DE [1], Plaintiff Steeve Bernard Orelus ("Plaintiff" or "Orelus") commenced this action against Defendant pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, and the New York State Insurance Law ("NYIL"), §§ 5102(a), (d) alleging that a United States Postal Service ("USPS") vehicle negligently hit a car in which Plaintiff was a passenger, causing serious injury and economic loss. *See* Compl. The Government denies liability. *See* Defendant's Memorandum of Law, DE [27-27] ("Def. Mem.") at 26. For the reasons set forth below, the Court recommends that Defendant's Motion be granted in part and denied in part.

1

## I.    BACKGROUND

### A. **Relevant Facts**

The following facts are taken from the parties' pleadings, Local Rule 56.1 statements, affidavits, affirmations and exhibits.  Unless otherwise indicated, these facts are not in dispute.

#### a. *The Accident*

At all relevant times, Plaintiff was a resident of Nassau County, New York. *See* Compl., ¶ 7; Answer, DE [7], ¶ 7.  On December 18, 2021, he was the front-seat passenger in a 2016 Honda Civic (the "Honda") owned by William Griffith ("Griffith"), who was driving.  *See* Compl., ¶ 17; Answer, ¶ 17; Plaintiff's Response to Defendant's 56.1 Statement ("Pl. 56.1"), DE [28-11], ¶¶ 1-2, 5.  At approximately 11:30 p.m. on that day, as the Honda was proceeding east in the right lane on Sunrise Highway through Wantagh, New York, it was struck on the driver's side ("the Accident") by the back portion of a USPS tractor-trailer (the "USPS Vehicle") as its driver, Pablo La Cruz ("La Cruz") pulled into the right lane.  Pl. 56.1, ¶¶ 1, 7, 12, 13, 15.  At the time of the Accident, La Cruz was transporting mail from the USPS facility at John F. Kennedy Airport in Queens, New York to the USPS facility in Melville, New York. *Id.*, ¶ 7.  Orelus "felt the car shaking" after the impact, which left indentations on the Honda's driver's side, closest to the front wheel.  *Id.*, ¶¶ 18, 30.  The airbags on the Honda did not deploy.  *Id.*, ¶ 29.  After both vehicles stopped, a police officer arrived, and both Griffith and Plaintiff declined medical assistance at the scene.  *Id.*, ¶¶ 25, 27, 28.  The Police Accident Report attributed fault to La Cruz, using the "Apparent Contributing Factor" codes for "Failure to Yield Right of Way" and "Passing or Lane

2

Usage Improper." *See id.*, ¶ 33; Declaration of Mary M. Dickman in Support of Defendant's Motion, DE [27-2] ("Dickman Decl."), Ex. A ("Police Report"), DE [27-3]. State Farm Insurance ("State Farm") was Griffith's automobile insurer at the time of the Accident.  Pl. 56.1, ¶ 51.

### b. *Plaintiff's Medical Treatment*

#### i. Pre-Surgery Treatment

Upon returning to his home after the Accident, Plaintiff "felt pain in his neck and lower back," which he rated as a seven out of ten in intensity.  Pl. 56.1, ¶¶ 42-43; Dickman Decl., Ex. B ("Pl. Dep."), DE [27-4] at 83:17-84:10.  He slept that night and took no medication for pain.  Pl. 56.1, ¶¶ 44, 46.  Two days later, on Monday, December 20, 2021, Orelus and Griffith both sought treatment at West Hempstead Health and Wellness.  *Id.*, ¶ 50.  Plaintiff was evaluated by Dr. Jean-Pierre Barakat, M.D. ("Dr. Barakat").  *Id.*, ¶ 51; *see* Dickman Decl., Ex. G ("State Farm Records"), DE [27-9] at 36-53.  Dr. Barakat reported that Orelus suffered "moderate tenderness of the cervical spine, with a reduced range of motion, and moderate tenderness of the lumbar spine, also with a reduced range of motion."  Pl. 56.1, ¶ 54; State Farm Records at 38-39.  Orelus was diagnosed with "cervicalgia, neck sprain, low back pain, a sprain of the lower back, back spasms and myalgia."  Pl. 56.1, ¶ 56.  Dr. Barakat prescribed him with physical therapy and advised that he be evaluated by a chiropractor and an acupuncturist.  *Id.*, ¶ 57; State Farm Records at 648.  On January 3, 2022, Dr. Barakat examined Plaintiff again, and his diagnosis was unchanged.  Pl. 56.1, ¶¶ 73-75.

Also on Monday, December 20, 2021, Plaintiff was examined at One Hand 1 Physical Therapy P.C. ("One Hand PT").  Pl. 56.1, ¶ 60; Dickman Decl., Ex. H ("One Hand PT Records"), DE [27-10] at 3.  At that appointment, Plaintiff reported pain at an overall seven out of ten in terms of severity, aggravated by a variety of physical maneuvers, including bending back or down, prolonged sitting, standing and walking.  One Hand PT Records at 3.  He was diagnosed with cervicalgia, pain in his thoracic spine, and low back pain, and was prescribed massage, myofascial release and stretching and strengthening exercises, as well as the use of hot and cold packs, an infrared lamp and use of an electrical stimulation device.  Pl. 56.1, ¶ 61; One Hand PT Reports at 6.  From December 20, 2021 through January 31, 2022, Orelus received physical therapy at One Hand PT on 14 occasions.  Pl. 56.1, ¶ 62.

Finally on December 20, 2021, Plaintiff was examined at Seneca Acupuncture ("Seneca") where he reported pain in his neck, an unspecified shoulder, his chest, the left side of his ribcage, his back, tailbone, an unspecified hip and buttocks, at a level of eight out of ten in intensity.  Dickman Decl., Ex. I ("Seneca Records"), DE [27-11] at 17-18.  Orelus received acupuncture treatment 14 times between December 20, 2021 and January 31, 2022.  Pl. 56.1, ¶ 66.

On December 22, 2021, Orelus was evaluated and treated at VJN Chiropractic ("VJN"), where he was diagnosed with spinal subluxation in his cervical, thoracic and lumbar vertebrae, a thoracic and lumbar sprain or strain, and a lumbosacral sprain or strain.  State Farm Records at 127-29; Pl. 56.1, ¶¶ 67-68.  VJN treated him again

three times in January, and on January 19, 2022, Plaintiff rated his back pain as a seven on a scale from one to ten.  Pl. 56.1, ¶¶ 68-69.

On January 24, 2022, Orelus received Magnetic Resonance Imaging ("MRI") of his spine at Star Medical Diagnostic, P.C. ("Star"), which showed "straightened cervical lordosis and a bulging disc annuli with cord impingement and flattening at three locations – C3-C4, C4-C5 and C5-C6" in his cervical spine and "transitional vertebrae of the lumbosacral junction and a diffuse disc bulge with thecal sac flattening and bilateral neural foraminal narrowing at three locations – L3-L4, L4-L5 and L5-S1" in his lumbar spine.  *Id.*, ¶¶ 76-78; Dickman Decl., Ex. K ("Star Records"), DE [27-13] at 1-4.

On February 3, 2022, Dr. Noah Godwin, M.D. ("Dr. Godwin") assessed Plaintiff at the facility ASC of Rockaway Beach.  *See* Pl. 56.1, ¶ 79; Dickman Decl., Ex. L ("ASC Records") at 5-8.  At that visit, Dr. Godwin's examination of Orelus's neck revealed "mild, moderate, severe tenderness," that Plaintiff's range of motion in his cervical and lumbar spine was somewhat reduced and painful, and that "multiple trigger points [were] revealed at the deep palpitation in the lower paraspinal musculature." *See* Pl. 56.1, ¶¶ 81-87.  In addition, Dr. Godwin noted that Orelus's muscle strength in his upper and lower extremities was normal but that his sensation was decreased. *Id.*, ¶ 84.  Dr. Godwin diagnosed him with cervicalgia, cervical disc disorder, radiculopathy, including of the lumbar and lumbosacral regions, myalgia, muscle spasm of the back, intervertebral disc disorders with radiculopathy, and "other intervertebral disc disorder." *Id.*, ¶ 89; ASC Records at 7.  Dr. Godwin recommended

5

that Orelus receive a "cervical spine epidural injection and/or lumbar spine epidural injection." Pl. 56.1, ¶ 90. That same day, a physician assistant named Rafeal Robenov with "EZ Relief Medical, P.C.," which business is not identified, administered Plaintiff two "trigger point" injections of lidocaine, dexamethasone and Marcaine. State Farm Records at 96.

On February 9, 2022, Orelus was examined by Dr. Pradip Sedani, M.D. ("Dr. Sedani") at NY Neurological Care, PLLC. Pl. 56.1, ¶ 92. Dr. Sedani found evidence of "left C5-6 cervical radiculopathy and right L4-5 lumbar radiculopathy." *Id.*, ¶ 93. On February 13, 2022, Plaintiff saw Dr. Matthew Kohler ("Dr. Kohler") at North Queens Surgical Center and received a lumbar epidural steroid injection "at L4-L5." *Id.*, ¶¶ 94-95. Orelus submitted an affirmation from Dr. Kohler sworn on November 11, 2024, in which Dr. Kohler states he diagnosed Plaintiff with "lumbago, lumbar disc displacement, lumbar radiculopathy, myofascial pain and myalgia." *See* Affirmation of Dr. Kohler ("Kohler Aff."), DE [28-5], at ¶ 3.

On March 14, 2022, Dr. Barakat conducted a follow-up examination of Plaintiff, noting mild tenderness of his cervical spine with a normal range of motion, and mild tenderness in his lumbar spine with a reduced range of motion, as well as decreased sensory responses in his upper and lower extremities. Pl. 56.1, ¶¶ 97-99. He recommended that Orelus continue to receive physical therapy two to three times per week, *id.*, ¶ 100, which Plaintiff attended at One Hand PT eight times from February 2, 2022 to March 17, 2022. *Id.*, ¶ 101. Over that same time period, he received treatment from Seneca eight times and VJN five times. *Id.* On February

23, 2022, his provider at VJN noted that Plaintiff was "Doing Fair/Better." *Id.*, ¶ 102; State Farm Records at 1451.

ii. <u>Plaintiff's Surgeries</u>

On March 20, 2022, Dr. Rajivan Maniam ("Dr. Maniam") at ASC of Rockaway Beach performed a surgery on Orelus: a lumbar discectomy at L4-L5 and L5-S1, with annuloplasty, disc injection and radiographic interpretation. Pl. 56.1, ¶ 103; *see* ASC Records at 1-3. He prepared an affirmation, sworn to on November 11, 2024, in which he stated that he diagnosed Orelus with lumbar intervertebral disc displacement and lumbar radiculopathy. Affirmation of Dr. Maniam ("Maniam Aff."), DE [28-6], at ¶ 3. After the surgery, Plaintiff testified that he felt better. Pl. 56.1, ¶ 106; Pl. Dep. at 113:13-25. From March 22, 2022 to March 27, 2022 he continued to receive physical therapy from One Hand PT, acupuncture from Seneca and chiropractic treatment from VJN. Pl. 56.1, ¶ 108.

On April 6, 2022, Plaintiff was evaluated by Chiropractic Evaluation Services, P.C., and the evaluator determined that he had reduced range of motion in his cervical and lumbar spines, as well as reduced muscle strength in his upper and lower extremities. *Id.*, ¶¶ 110-12; State Farm Records at 99-107. Orelus was assessed as having a "final whole person impairment of 24 percent" including a "10 percent impairment in his cervical spine and a 16 percent impairment in his lumbar spine." Pl. 56.1, ¶ 113; State Farm Records at 99. After May 2022, Orelus did not receive physical therapy or acupuncture. Pl. 56.1, ¶ 122.

On August 11, 2022, Plaintiff was examined by Dr. Ani Kalfayan ("Dr. Kalfayan") at Compassion Medical Care, PLLC, who noted that Orelus complained of a dull pain with numbness in his cervical and lumbar spines, stiffness, neck pain at an intensity of eight out of ten, and lower back pain at an intensity of ten out of ten. *Id.*, ¶¶ 123-27. Dr. Kalfayan diagnosed him with intervertebral disc disorders with radiculopathy in his lumbar region, cervical disc disorder with radiculopathy, cervicalgia, radiculopathy of the cervical region, radiculopathy of the lumbosacral region and low back pain, and recommended a lumbar discectomy, although Dr. Kalfayan's report did not mention that Plaintiff had received this surgery months earlier. *Id.*, ¶¶ 128-30; *see* Dickman Decl., Ex. R, DE [27-20] at 9-11.

On August 16, 2022, Orelus had a video consultation with Dr. Didier Demesmin ("Dr. Demesmin") with Minimally Invasive Pain Specialists ("MIPS"), who noted that Plaintiff had received various nonsurgical treatment, but did not mention his previous lumbar discectomy. Pl. 56.1, ¶¶ 132-34; Dickman Decl., Ex. S, DE [27-21] ("MIPS Records"), at 1-3. Dr. Demesmin recommended surgery, a lumbar microdiscectomy with annuloplasty at L4-L5 and L5-S1, Pl. 56.1, ¶ 135, and performed that surgery on August 19, 2022. *Id.*, ¶ 136; MIPS Records at 12-14. In an affirmation sworn on November 20, 2024, Dr. Demesmin stated that he observed "a painful range of motion" in both Plaintiff's cervical and lumbar spine, reviewed MRIs of these regions, and diagnosed him with a number of conditions, including cervical and intervertebral disc displacement. Affirmation of Dr. Demesmin ("Demesmin Aff."), DE [28-8], ¶¶ 4-7. Dr. Demesmin offered his opinion that Orelus

"continued to have post-traumatic neck pain and low back pain[,] which affected his activities of daily living[,] which was causally related to being involved in" the Accident. *Id.*, ¶ 9. In that affirmation, Dr. Demesmin also described restrictions to Plaintiff's range of motion in his cervical and lumbar spine, ranging between 33 percent and 60 percent loss from normal range, which measurements are corroborated by the records of his video consultation with Orelus. *Id.*, ¶ 12; MIPS Records at 7. No other treatment that Plaintiff received for his neck or back is in the record. Pl. 56.1, ¶ 137.

In total, Plaintiff's medical providers submitted bills totaling $59,517.89 to State Farm. *Id.*, ¶ 150. Logs of State Farm's reimbursements to Orelus for his medical expenses are inconsistent: a payment log dated December 19, 2022 submitted by State Farm indicates that it paid $44,127.91 to his providers, *see* Dickman Decl., Ex. T, DE [27-22], while a summary prepared June 11, 2023 indicates that State Farm paid $51,733.78 in reimbursements. *See* State Farm Records at 2-25.

c. *Plaintiff's Activities Before and After the Accident*

Orelus had no significant injuries or surgeries before the Accident, although he was in a vehicular collision with no injuries in 2018. Pl. 56.1, ¶¶ 138-39. Plaintiff worked at Sky Chefs, which is a food service provider in the aviation industry, from an unspecified date in 2021, before the Accident, to August 2023. Pl. Dep. at 21:13-24:6; Pl. 56.1, ¶ 140. He worked approximately 40 hours per week, plus some overtime, and continued to work while receiving the above-detailed medical treatment. Pl. 56.1, ¶¶ 140-41; Pl. Dep. at 105:1-9. Orelus took one week off work

following one of his two surgeries, although it is not specified which surgery. Pl. 56.1, ¶ 142. In January 2024, he started a new job driving a school bus for the Guardian Bus Company. *Id.*, ¶ 143.

Plaintiff stated in his deposition on February 15, 2024 that he did not think there were any activities that he could not do between December 2021 and August 2022 that he had formerly enjoyed. *Id.*, ¶ 144; Pl. Dep. at 119:5-10. Prior to the Accident, he played soccer "in the summertime." Pl. Dep. at 38:19-40:7; Pl. 56.1, ¶ 145. After the Accident, "he could not 'really play,' due to his back pain, but in the summer of 2023[,] he played soccer 'a little bit, but not too much.'" Pl. Dep. at 119:13-25; Pl. 56.1, ¶ 146. During Orelus's deposition, he stated that he felt the same as he had before the Accident and that he was not limited in any activities. Pl. 56.1, ¶¶ 148-49; Pl. Dep at 118:17-25.

### d. The Parties' Expert Reports

Plaintiff submits a report from a medical expert, Dr. David J. Weissberg ("Dr. Weissberg"), *see* Dickman Decl., Ex. V, DE [27-24] ("Weissberg Report"), while the Government submits two expert reports: (i) a medical report from Dr. Diana C. Patterson, M.D., Dickman Decl., Ex. W, DE [27-25] ("Patterson Report"); and (ii) a biomechanics analysis written by Elaine R. Serina, Ph.D., P.E., Dickman Decl., Ex. X, DE [27-26] ("Serina Report").

Dr. Weissberg examined Orelus on July 27, 2023 and reviewed the ASC Records, records from Plaintiff's February 13, 2022 visit to Dr. Kohler, the MIPS Records, records of Dr. Bakarat's treatment, and the Seneca Records. Weissberg

Report at 1-2; *see* Affirmation of Dr. Weissberg, DE [28-9] ("Weissberg Aff."). He measured Plaintiff's range of motion in his cervical and thoracolumbar spine and both shoulders, and determined that his range of motion upon extension of his thoracolumbar spine was restricted to 15 degrees, which is 40 percent less than the normal 25 degrees. Weissberg Report at 4. Dr. Weissberg opined that "Mr. Orelus sustained cervical and lumbar sprains as well as left shoulder sprain" and "still has ongoing symptomatology with objective findings of both his cervical and lumbar spine and shoulder region due to the sprain he sustained in his shoulder at the time of the [A]ccident." *Id.* at 5. Further, Dr. Weissberg stated that Plaintiff "has a partial permanent disability secondary to these injuries." *Id.*

Defendant's medical expert, Dr. Patterson, reviewed Orelus's medical records and examined him on May 30, 2024. Patterson Report at 1. She determined that he had a normal range of motion in his cervical and lumbar spines and no tenderness to his paraspinal muscles upon palpation. *Id.* at 4. In addition, she noted that "Plaintiff reported no significant soreness or disability in his back." *Id.* at 6. Dr. Patterson concluded that the Accident did not cause Plaintiff's injuries, and that Orelus would not have any future disability or impairment from the Accident. *Id.* The Government's biomechanics expert, Dr. Serina, examined Defendant's exhibits to its Motion and determined that the Honda "likely experienced a low-speed sideswipe impact to the front of the left (driver) side of the vehicle," resulting in a "low-magnitude impact." Serina Report at 8. Dr. Serina opined that a sideswipe of this nature may result in "crash pulse[s]," causing a car to "shak[e]," but that "[t]he

forces experienced by a far-side occupant in a low-speed sideswipe impact are low and not sufficient to move the body such that the voluntary ranges of motion for the neck and back are exceeded." *Id.* at 9.  She explained that "an intervertebral disc bulge or narrowing does not occur as the result of a single loading event, unless there is significant associated structural damage to the surrounding tissues." *Id.* at 10.  As a result, she concluded that "[d]ue to the minimal movement and low forces in the joints, the mechanism for structural damage to the tissues of the cervical and lumbar spine (such as the intervertebral discs) was not present during the" Accident.  *Id.* at 11.

### B. <u>Procedural History</u>

On July 19, 2022, Plaintiff filed an administrative claim with USPS for personal injuries and pain and suffering because of the Accident.  *See* Dickman Decl., Ex. U, DE [27-23] ("USPS Claim Communications") at 6.  USPS denied that claim on March 22, 2023.  *Id.* at 2.  Based on the above facts, by way of Complaint filed on March 30, 2023, Plaintiff commenced this negligence action in this Court pursuant to the Federal Tort Claims Act.  *See* Compl.  The Government answered the Complaint on June 5, 2023,  Answer, DE [7], and moved for summary judgment on January 25, 2025, which Motion Orelus opposes.  *See* Def. Mot.; Plaintiff's Response in Opposition ("Pl. Opp."), DEs [28], [28-12][1].  For the reasons set forth herein, the Court recommends that Defendant's Motion be granted in part and denied in part.

---

[1] Plaintiff has divided his Opposition between two filings for reasons unknown to the Court.  Because the page numbering continues in sequence between DE [28] and DE [28-12], the Court considers the two as one filing.

## II.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 56

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542

13

(E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## B. <u>The Federal Tort Claims Act</u>

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal citations omitted).  Congress has given limited consent for the federal government to be sued for tort liability: "The United States [with certain stated exceptions] shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  The statutory provision regarding the jurisdictional grant over FTCA cases further provides that:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of

14

property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Courts have "consistently held that Section 1346(b)'s reference to the law of the place means law of the State—the source of substantive liability under the FTCA." *Meyer*, 510 U.S. at 478, 114 S.Ct. at 1002 (internal quotation marks omitted).

### C. <u>New York State Insurance Law §§ 5102(a), (d)</u>

"'New York's no-fault insurance laws place limits on any recovery by a person involved in an automobile accident,' providing recovery only for (a) economic losses beyond the basic economic loss threshold and (b) non-economic losses arising from serious injury." *Comba v. United States*, 535 F. Supp. 3d 97, 106 (E.D.N.Y. 2021) (citing NYIL §§ 5102, 5104; *Avlonitis v. United States*, No. 16-CV-2521 (PKC) (SMG), 2020 WL 1227164, at *5 (E.D.N.Y. Mar. 13, 2020)). Here, "Plaintiff, as the occupant of an insured vehicle in New York, and Defendant, the United States, are 'covered person[s]' under the [NYIL]." *Comba*, 535 F. Supp. 3d at 106.

"Basic economic losses are medical costs, 'lost wages,' and 'reasonable and necessary expenses' totaling to $50,000.00 or less." *Id.* at 107 (citing NYIL § 5102(a)). NYIL § 5104 "denies a right of recovery for basic economic loss," *id.* (internal citation omitted), and so a plaintiff must demonstrate that he has suffered more than $50,000 in the types of expenses described above to recover economic damages. *See Perez v.*

15

*United States*, No. 17-CV-4838 (VSB), 2019 WL 2336526, at *10 (S.D.N.Y. June 2, 2019).

"Whether Plaintiff's injuries qualify as a 'serious injury' [entitling him to recover non-economic losses] pursuant to New York law is 'a threshold question for the court to decide.'" *Avlonitis*, 2020 WL 1227164, at *5 (quoting *Rivera v. United States*, No. 10-CV-5767 (MHD), 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012)). Under the NYIL, "serious injury" is defined as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

NYIL § 5102(d). "Whether the limitation on the use of a body function is 'permanent' or 'significant' requires a determination of the qualitative nature of the injury in relation to the use of the body part." *Lopez v. United States*, 312 F. Supp. 3d 390, 400 (S.D.N.Y. 2018) (citing *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d 345, 353, 746 N.Y.S.2d 865 (2002)).

"When moving for summary judgment in a case involving New York's no-fault insurance law and a claim for non-economic loss, the defendant has the initial burden to establish a *prima facie* case that the plaintiff has not sustained a serious injury as a matter of law." *Chin Yong Kim v. Napolitano*, No. 16-CV-9516 (KNF), 2018 WL 4636845, at *10 (S.D.N.Y. Sept. 27, 2018) (citing *Gaddy v. Eyler*, 79 N.Y.2d 955, 956,

582 N.Y.S.2d 990, 991 (1992)).  The defendant may meet that burden "with unsworn reports by the plaintiff's physicians or with sworn affidavits or affirmations by the defendant's own retained physicians." *Id.* (citing *Thomas v. O'Brien*, Nos. 08-CV-3250, 08-CV-3448 (RLM), 2010 WL 785999, at *7 (E.D.N.Y. Feb. 26, 2010)).  Once the defendant has done so, the burden shifts to the plaintiff to "offer objective proof of an injury" through "sworn affidavits or reports by physicians, or sworn medical test records, such as MRI reports." *Id.* (citing *Rivera v. United States*, No. 10-CV-5767, 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012)).  "'As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied notwithstanding some contrary probative evidence.'" *Id.* (quoting *Rivera*, 2012 WL 3132667, at *10).  "'To prove the extent or degree of physical limitation,'" a physician's report or affirmation may designate "'a numeric percentage of a plaintiff's loss of range of motion[, which] can be used to substantiate a claim of serious injury,'" or provide a "'qualitative assessment of a plaintiff's condition,'" so long as that assessment "'has an objective basis and compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function[,] or system.'" *Pow v. Armellini Indus. Inc.*, No. 22-CV-10908 (KPF), 2025 WL 1190774, at *4 (S.D.N.Y. Apr. 22, 2025) (quoting *Toure* v. *Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350, 746 N.Y.S.2d 865, 868 (2002)).

"As a final hurdle, Plaintiff's 'serious injuries' must be 'proximately caused by the accident at issue.'" *Comba*, 535 F. Supp. 3d at 111 (quoting *Carter v. Full Service, Inc.*, 29 A.D.3d 342, 344, 815 N.Y.S.2d 41 (1st Dep't 2006)).  "A defendant can win

17

summary judgment on this issue by showing 'additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition.'" *Id.* (quoting *Pommells v. Perez*, 4 N.Y.3d 566, 572, 797 N.Y.S.2d 380 (2005)).

## III.    DISCUSSION

Applying the standards set forth above, and for the reasons set forth below, the Court recommends that Defendant's Motion be granted in part, as to Plaintiff's claim for economic damages in excess of basic economic loss, and denied in part, as to Orelus's cause of action based on serious injury.  The Government does not address the merits of Plaintiff's underlying negligence claim, and so the Court does not either. Initially, as explained above, New York law applies to Orelus's claims, because of the Accident's location.  28 U.S.C. § 1346(b).

### A.  **Plaintiff's Claim Pursuant to NYIL § 5102(a)**

In his Complaint, Orelus alleges that he suffered "economic loss greater than basic economic loss as defined [by] § 5102(a) of the" NYIL.  Compl., ¶ 23.  While the Government argues that it is entitled to summary judgment with respect to this claim, *see* Def. Mem. at 19-20, Plaintiff does not address this subsection of the NYIL in his opposition.  *See generally* Pl. Opp.  As a result, he has abandoned his claim for damages for economic loss, and summary judgment is appropriate in this regard.  *See Bryant v. Steele*, 462 F. Supp. 3d 249, 270 (E.D.N.Y. 2020), *aff'd sub nom. Bryant v. Iheanacho*, 859 F. App'x 604 (2d Cir. 2021).

### B.  Plaintiff's Claim Pursuant to NYIL § 5102(d)

Orelus also seeks damages for serious injury, as defined by NYIL § 5102(d). *See* Compl., ¶¶ 19, 21.  The Government argues that it is entitled to summary judgment as to that cause of action, because Plaintiff has not shown that he sustained a "serious injury" under the statute, or that the Accident caused any injuries he did suffer.  *See* Def. Mem. at 20-26.  For the reasons set forth below, the Court concludes that Plaintiff has offered sufficient evidence to survive summary judgment.  *See* NYIL § 5102(d).

As explained above, under the NYIL, "serious injury" includes a "permanent consequential limitation of use of a body organ or member," *id.*, which on summary judgment must be supported by "'competent medical evidence that [a plaintiff's] injuries are permanent.'" *Comba*, 535 F. Supp. 3d at 108–09 (E.D.N.Y. 2021) (quoting *Ventra v. United States*, 121 F. Supp. 2d 326, 333 (S.D.N.Y. 2000)).  "To establish a 'significant limitation of use of a body function or system,' plaintiff must show 'something more than a minor limitation of use,'" and significance is measured in terms of both "'degree and duration.'" *Tenzen v. Hirschfeld*, No. 10-CV-50, 2011 WL 6034462, at *6 (E.D.N.Y. Dec. 5, 2011) (quoting *Licari v. Elliott,* 57 N.Y.2d 230, 235, 455 N.Y.S.2d 570, 573 (1982); *Jones v. United States,* 408 F.Supp.2d 107, 120 (E.D.N.Y. 2006)).

In his Opposition, Orelus argues that he has produced evidence that defeats Defendant's Motion based on three of these criteria:  (i) permanent consequential limitation of use of a body organ or member; (ii) significant limitation of use of a body

19

function or system; and (iii) an impairment that prevented Plaintiff from performing substantially all of his usual and customary daily activities for 90 of the 180 days following the Accident.  Pl. Opp. at 23-25.

> a. *Permanent Consequential Limitation of Use of a Body Organ or Member, and Significant Limitation of Use of a Body Function or System*

The first two criteria, "'permanent consequential limitation' and 'significant limitation,' overlap and are often considered together," because they are nearly identical, except that Plaintiff need not prove permanence to establish a significant limitation.  *Comba*, 535 F. Supp. 3d at 108 (quoting *Avlonitis v. United States*, No. 16-CV-2521 (PKC) (SMG), 2020 WL 1227164, at *6 (E.D.N.Y. Mar. 13, 2020)). Initially, the Government argues that Orelus has failed to create a genuine issue of material fact that he suffered a serious injury as the result of the Accident.  Def. Mem. at 23.  The Court disagrees.

As explained above, Defendant carries the initial burden of establishing a *prima facie* case that Plaintiff has not sustained a serious injury under either criteria. *Chin Yong Kim,* 2018 WL 4636845, at *10.  The Government has sustained its burden by citing its expert report and Plaintiff's own deposition testimony.  *See Ciappetta v. Snyder*, No. 15-CV-4427 (JMA) (ARL), 2021 WL 536131, at *8 (E.D.N.Y. Jan. 22, 2021), *report and recommendation adopted*, 2021 WL 512462 (E.D.N.Y. Feb. 11, 2021) (defendant may cite to plaintiff's testimony to meet its *prima facie* burden in a NYIL § 5102(d) action).  In her Report, Dr. Patterson concluded that, based on Defendant's exhibits to its Motion, including Orelus's medical records, and her own  examination

of Plaintiff on May 30, 2024, he had a normal range of motion in his cervical and lumbar spines, no tenderness to his paraspinal muscles on palpitation, reported no "significant soreness or disability in his back," and would not have any future disability or impairment from the Accident. Patterson Report at 1, 4, 6. She also opined that the Accident did not cause his injuries, and that it was more likely "that any small amount of radiographic changes to his cervical and lumbar spine are attributable to degeneration caused by activity level and multiple prior employments that required heavy or repetitive lifting and twisting." *Id.* at 6. With respect to permanence, Orelus testified at his deposition that he felt the same as he had before the Accident and was not limited in any activities other than recreational soccer. Pl. 56.1, ¶¶ 148-49; Pl. Dep at 118:17-25. This evidence is sufficient to establish Defendant's *prima facie* case that Plaintiff's physical limitations are neither permanent, nor significant, and that they were not caused by the Accident. *See Alvarez v. E. Penn Mfg. Co.*, No. 10-CV-09541 (RKE), 2012 WL 4094828, at *7 (S.D.N.Y. Sept. 17, 2012).

Orelus, however, has met his burden to rebut that *prima facie* showing by submitting sworn affirmations, MRI reports, and a physician's expert report. *See Chin Yong Kim*, 2018 WL 4636845, at *10. Initially, the Government argues that the Court cannot consider the Demesmin Affirmation, affirmed on November 20, 2024, because it does not discuss a recent examination of Plaintiff, but instead Dr. Demesmin's August 16, 2022 video consultation with Orelus and Plaintiff's August 19, 2022 lumbar microdiscectomy. Defendant's Reply, DE [29] ("Def. Reply") at 3.

The Court agrees that for the purpose of showing a permanent consequential limitation, Plaintiff must submit an affirmation based on a recent examination, but that same requirement does not apply with respect to a significant limitation. *See Howard v. United States*, No. 17-CV-1295 (JLS) (SR), 2022 WL 2656792, at *12 (W.D.N.Y. June 14, 2022), *report and recommendation adopted*, 2022 WL 2657161 (W.D.N.Y. July 8, 2022) ("[B]ecause the significant limitation category does not require permanence, a recent examination may not be required if there is a sufficient record of the injury's degree and duration following the accident.") (citing *Vasquez v. Almanzar*, 107 A.D.3d 538, 540, 967 N.Y.S.2d 361, 362-63 (1st Dep't 2013)). Because Dr. Demesmin's affirmation postdates his evaluation of Plaintiff by more than two years, *see* Demesmin Aff., it cannot be used to show that he suffered a permanent consequential limitation, but it is probative of a significant limitation. The Weissberg Report, by contrast, was drafted July 27, 2023, the same day Dr. Weissberg examined Orelus, and so his Report may support Plaintiff's rebuttal as to both criteria. *See* Weissberg Report; Weisberg Aff.

Turning to the substance of Orelus's evidence, and as explained above, a physician's sworn affirmation or expert report identifying a percentage loss in a plaintiff's range of motion can demonstrate serious injury for summary judgment purposes. *Pow v. Armellini Indus. Inc.*, No. 22-CV-10908 (KPF), 2025 WL 1190774, at *4 (S.D.N.Y. Apr. 22, 2025). Both the Demesmin Affirmation and the Weissberg Report identify limitations in Orelus's spinal range of motion exceeding 20 percent. *See* Demesmin Aff., ¶ 12; Weissberg Report at 4. This percentage of limitation creates

22

a genuine issue of material fact as to whether he was seriously injured.  *See Satterfield v. Maldonado*, 127 F. Supp. 3d 177, 194 (S.D.N.Y. 2015) (quoting *Hodder v. United States,* 328 F.Supp.2d 335, 356 (E.D.N.Y. 2004)) ("'While there is no set percentage for determining whether a limitation in range of motion is sufficient to establish "serious injury," the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes.'").  Combined with his MRIs demonstrating that Orelus suffered disc bulges, *see* Star Records at 1-4, Plaintiff has offered sufficient evidence that he suffered a "significant limitation" of his spine.  *See Gonzalez v. Kenan Advantage Grp., Inc.*, No. 1:22-CV-10962 (CM), 2024 WL 3445243, at *11 (S.D.N.Y. July 17, 2024) (citing *Rivera v. United States*, No. 10-CV-5767 (MHD), 2012 WL 3132667, at *24 (S.D.N.Y. July 31, 2012); *Davis v. Alnhmi*, 96 A.D.3d 507, 508, 946 N.Y.S.2d 163, 164 (1st Dep't 2012)).  As to a "permanent consequential limitation," Dr. Weissberg opined in his Report that Orelus "has a partial permanent disability secondary to these injuries."  Weissberg Report at 4.  Accordingly, Plaintiff has successfully rebutted the Government's *prima facie* case on this ground as well.  As to the issue of causation, Dr. Weissberg concluded that the Accident caused a shoulder sprain, which in turn caused his cervical and lumbar spine symptoms.  *See id.*  Accordingly, summary judgment is inappropriate as to these two criteria.

### b. An Impairment for 90 of the 180 days Following the Accident

By contrast, Orelus cannot demonstrate that he experienced an impairment that prevented him from performing substantially all of his usual and customary

daily activities for 90 of the 180 days following the Accident.  *See* NYIL § 5102(d).  He worked approximately 40 hours per week, plus some overtime, while receiving treatment after the Accident, although he took a week off after one of his two surgeries.  Pl. 56.1, ¶¶ 140-42; Pl. Dep. at 105:1-9, 120:17-24.  The Government has met its initial burden by presenting Dr. Patterson's opinion that Plaintiff "did not experience any prolonged period of partial or full disability secondary to this accident."  Patterson Report at 6.  Moreover, Plaintiff testified that he did not think there were any activities that he could not do between December 2021 and August 2022 that he had formerly enjoyed, other than playing recreational soccer less often.  Pl. 56.1, ¶ 144-46; Pl. Dep. at 119:5-25.  Accordingly, Orelus has not demonstrated a genuine issue of material fact that he suffered serious injury according to this criterion, and summary judgment is appropriate.  *See Oh v. Trujillo-Montoya*, No. 21-CV-1042 (RPK) (PK), 2024 WL 1282417, at *13 (E.D.N.Y. Mar. 25, 2024), *aff'd sub nom. Oh v. HYS Livery Serv., Inc.,* No. 24-1111, 2025 WL 967692 (2d Cir. Mar. 31, 2025) (quoting *Hernandez v. Leichliter*, No. 14-CV-5500 (AJN), 2016 WL 676455, at *2 (S.D.N.Y. Feb. 17, 2016)) ("'New York courts have frequently held that there is no "serious injury" under the 90/180 category as a matter of law, and thus that summary judgment for a defendant is appropriate, if a plaintiff returns to work within 90 days of a car accident.'").

## IV.    CONCLUSION

For the reasons set forth above, the Court recommends that Defendant's Motion be granted with respect to Plaintiff's claim for economic loss and denied with respect to his cause of action for damages based on serious injury.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
          August 13, 2025

                          /s/ Steven I. Locke
                          STEVEN I. LOCKE
                          United States Magistrate Judge

25